**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON
CIVIL CASE NO. 6:09-216-GFVT-JGW**

**THOMAS ELZA, JR.**                                                                **PETITIONER**

**V.**

**ARVIL CHAPMAN, Warden**                                                       **RESPONDENT**

**REPORT & RECOMMENDATION**

On June 26, 2009, petitioner Thomas Elza, Jr. filed a petition pursuant to 28 U.S.C. §

2254 in the United States District Court for the Eastern District of Kentucky, challenging the

August 1, 2005 judgment of the Laurel County Circuit Court in which he was convicted of

murder and first degree burglary and sentenced to life imprisonment.  Pursuant to local practice,

the petition has been referred to the undersigned for initial review and a report and

recommendation.  28 U.S.C. §636(b).

**I.  Factual and Procedural Background**

On October 17, 2003, in connection with the home invasion and killing of petitioner's ex-

girlfriend's mother, petitioner was indicted on the following offenses:  (1) murder, (2) first

degree burglary, (3) kidnaping, (4) two counts of retaliating against a witness, and (5) two counts

of wanton endangerment.  Petitioner was notified of the Commonwealth's intent to seek the

death penalty.  Although appointed counsel repeatedly sought through motion practice to remove

the possibility of capital punishment, the Commonwealth successfully resisted those efforts.

On July 1, 2005, a few days before trial was scheduled, petitioner entered into a plea

agreement with the Commonwealth of Kentucky in which he pleaded guilty to murder and first

degree burglary.  In exchange, the Commonwealth dismissed the remaining charges and recommended a life sentence on the murder count and twenty years on the burglary count, to run concurrently.  On August 1, 2005, the court accepted the plea and sentenced petitioner to life imprisonment.

On April 10, 2006, petitioner filed a motion for an evidentiary hearing and appointment of counsel in Laurel Circuit Court.  He also filed a motion to vacate his judgment and sentence pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42.  In his RCr 11.42 motion, petitioner argued that his plea was not knowing and voluntary, but instead was based upon the erroneous advice, coercion, and intimidation by petitioner's counsel.  In a closely related claim, petitioner additionally argued that his plea resulted from the ineffective assistance of counsel. Doc. 1-9 at 8-9.  The state trial court denied petitioner's RCr 11.42 motion as well as petitioner's request for an evidentiary hearing on the motion.

On July 6, 2007, the Kentucky Court of Appeals vacated the denial of the RCr 11.42 motion and remanded for an evidentiary hearing.  Doc. 1-9 at 16.  Despite expressing its opinion that "evidence that Elza signed the AOC forms and that the court entered into the guilty plea colloquy with him was sufficient evidence to support a finding of voluntariness of the pleas," in a split decision a two-judge majority remanded on the basis of its interpretation of Kentucky law that an evidentiary hearing is required in any case in which a defendant claims that his plea resulted from "coercion, manipulation, and intimidation."  *Id.* at 15.

On March 21, 2009, the Kentucky Supreme Court reversed the intermediate appellate court and reinstated the trial court's judgment denying the RCr 11.42 motion without an evidentiary hearing.  *Id.* at 24.

Petitioner filed the present federal petition for a writ of habeas corpus on June 26, 2009.[1] In his federal petition, petitioner presents the following claims: 1) the Kentucky Supreme Court erred by finding his plea to be voluntary without an evidentiary hearing; 2) counsel coerced him into pleading guilty; 3) counsel failed to pursue an intoxication defense; and 4) counsel failed to advise him of the option of an *Alford* plea.  Doc. 1-2 at 7-17.  On February 4, 2010, respondent filed a response together with a motion to dismiss, or alternatively, a motion for summary judgment.  Doc. 13.  Petitioner filed a reply on March 1, 2010.  Doc 17.

**II.     Analysis:**

**A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 100 Stat. 1214 (Apr. 24, 1996) (AEDPA) applies to all habeas cases filed after April 25, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  The AEDPA requires "heightened respect" for legal and factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  Thus, relief under 28 U.S.C. §2254 may be granted only if a state's prior adjudication of the same claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).   There is a presumption that the state court's determination of factual issues is correct; petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C.§ 2254(e)(1).

---

[1]Petitioner's petition is timely because the collateral challenge to his conviction in state court had the effect of tolling the one-year statute of limitations.

Because the focus of a federal petition for writ of habeas corpus is on whether the state court's post-conviction decision was contrary to clearly established Supreme Court law or was based on an unreasonable determination of the facts, the Kentucky Supreme Court's decision affirming the denial of Petitioner's RCr 11.42 motion must be closely examined. As discussed below, none of petitioner's claims warrant relief under the relevant standard of review.

**B. Analysis of Individual Claims**

**1. Voluntariness of the Guilty Plea and Alleged "Coercion"**

Petitioner argues that the Kentucky Supreme Court erred in rejecting his claim that his guilty plea was invalid without a hearing. Petitioner contends that the state court's findings were based on an unreasonable determination of the facts. Closely related is petitioner's second claim that the plea was invalid because it was coerced by counsel's "emotional manipulation." Doc. 1-2 at 15. Petitioner alleges that trial counsel told his mother that she needed to convince petitioner to plead guilty because otherwise, he would receive the death penalty, and that she in turn cried and "wore down" the petitioner's resolve to stand trial. *Id.*

The Kentucky Supreme Court rejected both claims. The court first examined the plea colloquy in the trial court and concluded that it was a voluntary guilty plea:

> ...Our analysis, however, must begin with the voluntariness of his guilty plea. This is because the effect of a valid plea of guilty is to waive all defenses other than that the indictment charges no offense. *Quarles v. Commonwealth,* 456 S.W.2d 693, 694 (Ky.1970). We determine the voluntariness of the plea from the "totality of the circumstances." *Rodriguez v. Commonwealth,* 87 S.W.3d 8, 10-11 (Ky.2002). In doing so, we "juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel." *Bronk,* 58 S.W.3d at 486.

> The trial court initially determined the voluntariness of Elza's guilty plea during the thorough colloquy conducted pursuant to *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Elza described, in his own words, what happened when he killed Pauline Rey. He explained that he entered Rey's residence with the purpose of "getting into an altercation with her"; that he hit

Rey; and that he strangled Rey to death. Not only are such admissions made in open court afforded much credence, but Elza's description completely refutes the current claim that he has no memory of the crimes. *See Edmonds v. Commonwealth,* 189 S.W.3d 558, 569 (Ky.2006) ("Solemn declarations in open court carry a strong presumption of verity.")

Elza stated that he was satisfied with his attorney, and that counsel had fully explained the defenses available to him. He denied that he had been coerced or induced to accept the plea agreement. He stated that he was not under the influence of any mind-altering substance or medication that would inhibit his ability to understand the guilty plea proceedings. He stated that he had never been diagnosed with a mental disease that would affect his ability to reason or understand the proceedings against him. He appeared coherent, engaged, and involved during the colloquy. Elza signed the motion to enter a guilty plea (AOC form 491) and indicated that he read and understood its contents.

Having found no indication from the plea colloquy to negate the presumption that Elza's plea was voluntary, we turn to counsel's performance. The Commonwealth notified Elza prior to the guilty plea of its intention to proceed with capital punishment. . .. Thus, Elza faced a maximum punishment of death and a minimum punishment of imprisonment for twenty years. ...Defense counsel engaged in extensive motion practice in an effort to remove the death penalty as a possible sentence. The Commonwealth vigorously opposed each motion, illustrating its intent to seek capital punishment. In light of these circumstances, the plea accepted by Elza was reasonable. By pleading guilty, Elza avoided the death penalty. In addition, two remaining felony counts...and two remaining misdemeanor counts...were dismissed. ....

........

In order to be valid, a guilty plea in a criminal case must represent a meaningful choice between the probable outcome at trial and the more certain outcome offered by the plea agreement." *Vaughn,* 258 S.W.3d 435, 439 (Ky.App.2008). *See also North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In light of the uncertainties Elza potentially faced at trial, including the death penalty, it appears a meaningful choice was made.

The record before the trial court conclusively refutes the assertion that Elza's guilty plea was involuntary. His statements and demeanor at the plea colloquy belie any contention that he was coerced into pleading guilty. Further, Elza has failed to make even a threshold showing that defense counsel's performance was deficient in any manner. His claim that defense counsel told him he would "assuredly" receive the death penalty does not amount to coercion. Rather, the record establishes that defense counsel's advice was reasonable, as the Commonwealth repeatedly and successfully defended any attempt to remove the case from capital punishment eligibility.

For these reasons, an evidentiary hearing was not required in this case. ...[H]ere, Elza filed no affidavits in support of his claim of coercion and did not identify any particular instance of the alleged manipulation other than defense counsel's truthful warning that the death penalty was a very real possibility. Furthermore, as detailed above, the record clearly establishes that Elza's guilty plea was voluntary, and that the plea agreement was reasonable in light of the circumstances. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Edmonds, 189 S.W.3d at 569*, quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Doc. 1-9 at 20-23, *Elza* 284 S.W.3d at 122.

The analysis of the Kentucky Supreme Court appropriately determined that petitioner's guilty plea was knowing, intelligent and voluntary consistent with established Supreme Court case law. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The state court did not err by relying on the plea colloquy, which is presumed to be valid absent proof that the plea was induced by threats, misrepresentations, or improper promises. *See Brady v. United States*, 397 U.S. 742, 755 (1970).

A guilty plea is not invalid merely because a defendant entered into it out of fear of the death penalty. *Id.* Counsel has a duty to accurately inform a defendant of the sentences he faces if he is convicted. *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002). "[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive." *United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004). Therefore, it was not coercion for petitioner's counsel to emphasize to petitioner that there was a good chance that he would receive the death penalty, given the Commonwealth's demonstrated commitment to pursuing capital punishment.

In support of his federal petition, petitioner has attached three affidavits in an effort to present the type of "clear and convincing" evidence to this court that would be required to overturn the state court's factual findings.  Specifically, petitioner offers:  his own affidavit, Doc. 1-6, the affidavit of his father, Doc. 1-7, and the affidavit of his mother, Doc. 1-8.  All three affidavits purport to contradict petitioner's statements during his plea colloquy that his plea was not coerced.  All three affidavits state in some fashion that trial counsel called petitioner's mother at home and told her that she had to convince petitioner to accept the plea bargain or that he would receive the death penalty.  *See* Docs. 1-6, 1-7, 1-8.

None of the three affidavits can or should be considered in this federal habeas proceeding because they were not timely presented to the state court.  The state court expressly noted that petitioner's claim that his plea was "coerced" by counsel was "conclusory" and unsupported by any affidavits.  Doc 1-9 at 19, *Commonwealth v. Elza*, 284 S.W.3d 118, 120 (Ky. 2009).  In review of a federal petition brought pursuant to 28 U.S.C. § 2254, a federal court must review only the record that was before the state court to assess whether the state court's decision was unreasonable.  *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  Petitioner could have obtained the same affidavits and attached them to his RCr 11.42 motion in state court, but failed to do so.  Therefore, this court will not consider them.

In short, the Kentucky's Supreme Court analysis is not contrary to clearly established federal law, nor does it reflect an unreasonable determination of the facts.  The state court properly determined that the plea colloquy was valid pursuant to the standards established in *Boykin v. Alabama,* and properly presumed the veracity of petitioner's statements made in open court.  *See Blackledge v. Allison*, 431 U.S. at 74.

In addition to the findings and legal analysis of the state court, this court has reviewed the DVD of the plea colloquy. That review confirms the propriety of the deference afforded to the state court. Petitioner affirmed the following under oath: that his attorneys had explained the charges, penalties, and potential defense to him, DVD: 7/1/05; 1:05:24-31; that he understood the consequences of entering the guilty plea, *id.* at 1:05:32-39; that he fully understood his constitutional rights and waived his right to a jury trial, right to confront adverse witnesses, right against self-incrimination, and right to appeal, *id.* at 1:06:20-46; and that he was not under the influence of drugs or alcohol, nor was mentally ill, *id.* at 1:06:47 – 7:02. Petitioner also stated that he fully understood the significance of pleading guilty, *id.* at 1:07:03-09; *that no one had threatened, forced, or otherwise coerced him into pleading guilty*, *id.* at 1:07:11-15 (emphasis added); and that he was pleading guilty because it was in his best interests, *id.* at 1:07:55-59. During the same colloquy, he affirmed that he had reviewed and understood the motion to enter a guilty plea before signing it, *id.* at 1:07:28-47; that he signed the motion to enter a guilty plea by his own free will, *id.* 1:07:55-59; that he understood the Commonwealth's plea offer, *id.* at 1:08:20-34; that no other promises had been made to him, *id.* at 1:08:35-43; and that he was completely satisfied with his attorney's representation, *id.* at 1:08:50-9:02.

Finally, petitioner affirmed that he was pleading guilty because he was truly guilty. *Id.* at 1:09:11-14. Petitioner provided a factual basis for the plea in his own words by describing what happened during the killing, and by admitting to illegally entering the victim's home and to her murder. *Id.* at 1:09:16-46. On the basis of petitioner's statements, the state trial court determined that the guilty plea was knowing, voluntary, and intelligent. *Id.* at 1:09:51-10:02.

The state trial court reached the same legal conclusion during its post-conviction review, in denying petitioner's RCr 11.42 motion. The Kentucky Supreme Court affirmed both the

factual findings and the legal conclusions reached by the trial court.  After reviewing both the Kentucky Supreme Court's opinion and the underlying factual record, this court finds no basis for relief under 28 U.S.C. §2254, because the plea was voluntary, knowing and intelligent and was not improperly coerced.

### 2.  Ineffective Assistance of Counsel Claims

The third and fourth issues presented by petitioner in this federal petition both allege that his trial attorney was constitutionally deficient in violation of the Sixth Amendment. Specifically, petitioner alleges that counsel erred by failing to pursue an intoxication defense, and that counsel erred by failing to advise him of the option of an *Alford* plea.

### a.  Alford Plea "Error" Not Reviewable

Petitioner's fourth claim was not previously presented to any state court.  Petitioner now argues for the first time in this proceeding "that counsel failed to advise [Petitioner] that he could enter a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) but, he did advise [Petitioner] that if he accepted the Commonwealth's offer on a plea of guilty that he would be out of prison in a little over 18-years [sic]."  Doc 1-2 at 16.  Because petitioner never presented this issue in his state post-conviction proceeding, he is barred by the doctrine of procedural default from presenting it to this court.  *See Alley v. Bell*, 307 F.3d 380, 385-86 (6th Cir. 2002).

### b.  Alleged Failure to Pursue Intoxication Defense

Petitioner also argues that his attorney was constitutionally deficient for failing to advise him of a viable intoxication defense, which defense petitioner asserts would have prevented his convictions.  While this assertion of error is reviewable, the deference required to the state court again requires close review of the prior analysis of the Kentucky Supreme Court:

> Elza insists that the evidence supporting an intoxication defense was very strong, and that his attorney was ineffective for recommending a plea agreement in light of that sustainable defense.

Doc. 1-9 at 20.

> Having found no indication from the plea colloquy to negate the presumption that Elza's plea was voluntary, we turn to counsel's performance. The Commonwealth notified Elza prior to the guilty plea of its intention to proceed with capital punishment, citing the first-degree burglary aggravator enumerated at KRS 532.025(2)(a)(2) as a basis. Thus, Elza faced a maximum punishment of death and a minimum punishment of imprisonment for twenty years. *See* KRS 532.030(1). Defense counsel engaged in extensive motion practice in an effort to remove the death penalty as a possible sentence. The Commonwealth vigorously opposed each motion, illustrating its intent to seek capital punishment. In light of these circumstances, the plea accepted by Elza was reasonable. By pleading guilty, Elza avoided the death penalty. In addition, two remaining felony counts (kidnapping and retaliation against a participant in the legal process) and two remaining misdemeanor counts (wanton endangerment in the second degree) were dismissed. *See Commonwealth v. Campbell,* 415 S.W.2d 614 (Ky.1967) (no ineffective assistance of counsel where defendant was advised to accept a reasonable plea agreement).

> "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Here, the record offers little indication that a defense of intoxication would have succeeded. The evidence of Elza's guilt was overwhelming and included the damning testimony of his ex-girlfriend who witnessed the entire crime. There was little hope of juror sympathy, as two young children watched Elza brutally murder their grandmother and then violently drag their mother from the home. Thus, we find no likelihood that the intoxication defense, had it been presented to a jury, would have succeeded in exonerating Elza.

Doc. 1-9 at 21-22, *Elza*, 284 S.W.3d at 122.

As referenced elsewhere in the Kentucky court's opinion, the Supreme Court has established a two-prong test for ineffective assistance of counsel claims, requiring both a showing of attorney error, and prejudice resulting from that error. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The first prong requires a showing that counsel's performance

was constitutionally deficient.  *Id.* at 687.  In reviewing counsel's performance, a court must

determine whether "in light of all the circumstances, the identified acts or omissions were

outside the range of professionally competent assistance."  *Id.* at 690.  There is a strong

presumption that counsel's performance was adequate.  *Id.*  Thus, the defendant must rebut the

presumption that "under the circumstances, the challenged action 'might be considered sound

trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

      The second prong of the *Strickland* test requires a showing of prejudice.  *Id.* at 687.  To

establish the prejudice prong, a petitioner must show "that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694.  When a defendant has pleaded guilty, he must show "a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In addition, even if the defendant asserts that he

would not have pleaded guilty had the attorney advised him of a potential defense, the defendant

must also demonstrate that the defense would have likely succeeded at trial.  *Id.*

      The Kentucky Supreme Court did not err in determining that the performance of

petitioner's trial counsel did not violate either of the two *Strickland* prongs.  An attorney's

performance is not deficient unless the advice was not "within the range of competence

demanded of attorneys in criminal cases."  *Strickland*, 466 U.S. at 698 (citing *McMann v.

Richardson*, 397 U.S. 759, 771 (1970)).  Petitioner fails to demonstrate that his counsel's advice

was not objectively reasonable.  *See Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1994)

(counsel was not deficient because it was reasonable to recommend a guilty plea in exchange for

a lighter sentence).   As noted by the state court, petitioner was facing the possibility of capital

punishment and evidence against the petitioner was overwhelming.  It was not error for counsel to advise petitioner to plead guilty under the circumstances.

The reasonableness of counsel's decision is bolstered by the fact that counsel advised petitioner to plead guilty after retaining an expert psychologist to evaluate an intoxication defense.  *See* Doc. 1-9 at 18.  The defense expert's report was reviewed by counsel prior to his decision not to pursue the defense at trial.  Under *Strickland*, there is a strong presumption that the counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690.  Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable…." *Id.*  Accordingly, trial counsel's decision that it was better for petitioner to plead guilty rather than go to trial and risk the death penalty was well within the exercise of reasonable professional judgment.

Aside from failing to satisfy the "error" prong of Strickland, the Kentucky Supreme Court determined (and this court agrees) that petitioner could not prove prejudice because he failed to show that the "intoxication" defense would have been successful.  *Hill v. Lockhart*, 474 U.S. at 59.   Under Kentucky law, to instruct the jury on voluntary intoxication, the defendant must present evidence that he "was so drunk that he did not know what he was doing," or that the intoxication "negatives the existence of an element of the offense."  *Rogers v. Commonwealth*, 86 S.W.3d 29, 44 (2002).

Petitioner suggests that two reports of mental evaluations support a voluntary intoxication defense.  The first evaluation was ordered by the trial court following a suicide attempt during petitioner's detention.  Doc. 1-9 at 18, *Elza*, 284 S.W.3d 118, 120.  The examiner found petitioner competent to stand trial but expressly declined to opine on the issue of criminal responsibility because petitioner told the evaluator that "my lawyer told me not to talk about [the

crimes]." *Id.* Therefore, the first report does not support the defense - and indeed, somewhat undermines it to the extent that petitioner's comments could be interpreted as reflecting knowledge of his crimes.

The second psychological evaluation was performed by the defense expert retained by trial counsel. *Id.* The second report discusses petitioner's history of methamphetamine use and notes that petitioner lacked any memory of his crimes. *Id.* The defense expert's report concludes that petitioner was in a drug-altered state at the time the crimes were committed and unable to differentiate between right and wrong. *Id.*

The Kentucky Supreme Court concluded that petitioner was not prejudiced by his counsel's decision not to pursue a trial based on an intoxication defense over a plea bargain because there was "no likelihood" that an intoxication defense would have been successful. Doc. 1-9 at 22, *Elza*, 284 S.W.3d at 122. The possibility that petitioner might have succeeded in obtaining a voluntary intoxication jury *instruction* does not render the state court's findings or legal analysis objectively unreasonable. Had the petitioner proceeded to trial, there is little doubt that the Commonwealth would have presented evidence in opposition to the defense of voluntary intoxication. Given the strength of the evidence against petitioner and the gravity of the crime, it is unlikely a jury would have been swayed by the single report of one defense expert, who at trial would have been subject to vigorous cross-examination. *See also* Doc. 1-9 at 20-21, *Elza*, 284 S.W.3d at 121 (noting that petitioner's description of the crime during the plea colloquy "completely refutes the current claim that he has no memory of the crimes"). Thus, this court defers to the state court's decision.

**3. Evidentiary Hearing**

Finally, petitioner argues that the Kentucky Supreme Court erred by denying him an evidentiary hearing on his RCr 11.42 motion.  Doc. 1-2 at 17.   The Kentucky Supreme Court reversed the decision of the Kentucky Court of Appeals on this issue.  Contrary to the intermediate appellate court, the Kentucky Supreme Court held that an evidentiary hearing is not required under applicable Kentucky state post-conviction rules for a case in which a petitioner alleges coercion in the plea process, when such allegations are "conclusory" and are refuted by the plea colloquy.  The issue of whether an evidentiary hearing was required under Kentucky law is not subject to challenge in this federal habeas corpus proceeding.  *See Danner v. Motley*, 448 F.3d 372 (6th Cir. 2006)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).   In addition, the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.  *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986).

Construing petitioner's claim liberally, the issue could be framed as one of Constitutional magnitude to the extent that petitioner argues that the state's findings of fact should not be presumed to be correct, because the state's procedures were constitutionally deficient.  *See generally Jefferson v. Upton*, ___ S. Ct. ___, 2010 WL 2025209 (May 24, 2010)(*per curiam*, holding that court erred by granting presumption of correctness to state habeas court's fact-finding process without addressing argument that state's procedures were deficient under pre-AEDPA law).  It is unclear whether this construction of petitioner's claim can be considered under the more rigorous post-AEDPA version of §2254.  However, even assuming the validity of the claim, it is without merit in this case.

Petitioner suggests that an evidentiary hearing is always required to consider the totality of the circumstances surrounding the guilty plea, or at least should be.  Doc. 1-2 at 17.  But none of the cases relied on by petitioner - nor any other controlling Supreme Court precedent -

requires an evidentiary hearing to consider the totality of the circumstances whenever a state court reviews the validity of a plea.  Certainly no "automatic" hearings are required in the analogous context of 28 U.S.C. §2255, when only conclusory allegations are presented as the sole evidence against a plea colloquy that fully complies with Rule 11.  To the contrary, the Supreme Court has made clear that "[t]o allow indiscriminate hearings in federal postconviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241-2254, would eliminate the chief virtues of the plea system-speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. at 71.  Thus, when a record refutes a petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.  *See Schiro v. Landrigan*, 550 U.S. 465 (2007).  The Kentucky Supreme Court did not err by failing to hold an evidentiary hearing because petitioner's conclusory allegations concerning "coercion" during the plea process were refuted by the totality of the circumstances on the record presented.  *See also generally* 28 U.S.C. §2254(e)(2)(A)(ii)(when a petitioner has failed to develop the factual basis for his claim in state court, he is not entitled to an evidentiary hearing in federal court unless the new facts could not previously have been discovered).

### III. Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED** that the petition for writ of habeas corpus in Civil Action No. 6:09-cv-00216-GFVT-JGW [Doc. 1] be **DENIED**.  The respondent's motion for summary judgment [Doc. 13] should be **GRANTED**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived.  Fed. R. Civ. P. 72(b)(2); *see also United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005);

*Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are sufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 21st day of June, 2010.

Signed By:

**J. Gregory Wehrman**

**United States Magistrate Judge**

16